

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

March 6, 1959

Honorable William S. Fly
Chairman
Senate Finance Committee

Honorable William S. Heatley
Chairman
House Appropriations Committee

Capitol Station
Austin, Texas

Gentlemen:

Opinion No. WW-565

Re: Whether the Employees
Retirement System and
and the Teachers Retire-
ment System are adminis-
trative agencies of the
State for which adminis-
tration expenses should
be appropriated by the
Legislature, and related
questions.

In your request for an opinion you recite that the
Legislative Budget Board has raised a question as to whether
it is necessary for the Legislature to make biennial appro-
priations covering the administration expenses of the Employees
Retirement System and the Teachers Retirement System of Texas.
You further advise that the Senate Finance Committee and the
House Appropriations Committee desire the opinion of the Attor-
ney General as to the legal status of the various funds of
these two retirement systems, in order that the Legislature
might act in the manner prescribed by law in making appropria-
tions for these two agencies.

The answer to the questions submitted is dependent
upon the construction of the provisions of the statutes re-
lating to the creation and administration of the two retire-
ment systems. The statutory provisions relating to the
Teacher Retirement System are embodied in Article 2922-1 of
Vernon's Civil Statutes, while the provisions relating to the
Employees Retirement System are contained in Article 6228-a.
If the various funds of the two retirement systems are required
to be deposited in the State Treasury it must follow, pursuant
to Section 6 of Article VIII of the Constitution of Texas, that
such funds cannot be expended or drawn from the Treasury but in
pursuance of specific appropriations made by law. If, on the
other hand, such funds are in reality trust funds and, hence,
not required to be deposited in the State Treasury, then the
same may be expended by the Board of Trustees of each Retire-
ment System in accordance with the general statutes pertaining
to the Systems without prior specific appropriations by the
Legislature.

Section 2 of Article 2922-1 speaks of the "corporate existence" of the Teachers Retirement System. It further recites that the Retirement System shall have the power and privileges of a corporation and shall transact all of its business in the name of the Teachers Retirement System of Texas. Section 10 creates and describes the various funds of the Teachers Retirement System, including the Expense Fund from which all expenses of administration and maintenance are paid. The Expense Fund is constituted by membership payments contributed annually by each member of the Retirement System in the amount of Two and no/100 ($2.00) Dollars, but it is provided that if the expenses of the State Board of Trustees are in excess of Two and no/100 ($2.00) Dollars per contributor for the year, the Board of Trustees shall transfer to the Expense Fund from the Interest Fund an amount necessary to cover the expenses as estimated for the year; but in no event shall the amount transferred exceed in any one year Fifty Cents ($.50) per member of record as of August 31 of that year. Section 12 places the general administration and responsibility for the proper operation of the Retirement System in a Board of Trustees and further authorizes the Board to establish rules and regulations for the administration of the funds created by the Act and for the transaction of its business. This Section further provides that:

". . . persons engaged by the State Board of Trustees, and all other expenses of the Board necessary for the operation of the Retirement System, shall be paid at such rates and in such amounts as the State Board of Trustees shall approve, provided that in no case shall they be greater than that paid for like or similar service of the State of Texas."

Section 13 provides that the State Board of Trustees shall be the trustees of the several funds created by the Act, and all securities, monies, and other assets of the Retirement System, and have full power to invest and re-invest same subject to the limitations and restrictions therein contained. Sub-section 3 of Section 13 reads as follows:

"The Treasurer of the State of Texas shall be the custodian of all bonds, securities and funds. All payments from said funds shall be made by him on warrants drawn by the State Comptroller of Public Accounts supported only upon vouchers signed by the Executive Secretary of the Retirement System. A duly attested copy of the resolution of the

Honorable William S. Fly, Honorable William S. Heatley,
page 3   (WW-565)


State Board of Trustees designating such person
shall be filed with said Comptroller as his au-
thority for issuing such warrants."  (Emphasis
added).


Subsection 2 of Section 16 directs that the Treasurer
of the State of Texas shall, upon becoming custodian of the
Retirement Fund, give a bond in the sum of Fifty Thousand and
no/100 ($50,000) Dollars.


In the interest of brevity we will not set out in de-
tail the various provisions of the Employees Retirement Act
(Article 6228a of Vernon's Civil Statutes) which we consider
pertinent to your inquiry, but it seems sufficient to say that
said Act contains provisions substantially the same as those
provisions of the Teacher Retirement Act above described.  In
this connection, we call attention to the following sections
of Article 6228a:  Subsection 6 of Section 6, Sections 7A and
7C, and Subsection 5 of Section 8.


In the case of Friedman v. American Surety Co. of New
York, et al., 151 S.W.2d 570 (1941) the Supreme Court of Texas
was concerned with the status of the Employees Compensation Fund
and the necessity for specific legislative appropriation prior
to the expenditure of the fund in the payment of unemployment
benefits.  In concluding that legislative appropriation was not
necessary, the Court stated:


"Subdivision b of Section 7 of Article 5221b
constitutes the State Treasurer treasurer and cus-
todian of the Unemployment Compensation Fund.  Un-
der the provisions of this subdivision the money
collected for such fund is never paid into the
State Treasury, nor is it contemplated that such
shall ever be done.  The officer who fills the
office of State Treasurer is simply given an added
duty or responsibility.  It is made the duty of
such officer to act as custodian of the Unemploy-
ment Compensation Fund, and to pay it over as pro-
vided by the Act.  The money collected for such
fund,--though levied and collected in the form of
excise taxes,--is not levied or collected to become
a fund of the State, as such.  To the contrary, it
is levied and collected under statutory provisions
that set it apart for the purpose for which it was
collected, and it can be used for no other purpose.
Simply stated, the fund created by the Act in its
very inception becomes the property of a trust
created for the benefit of a class of citizens of

this State,--the unemployed whose employers have
created it. <u>The taxes are levied and collected
for such fund, and not for the State in its sov-
ereign capacity. The statute permanently appro-
priates this fund to be used for the purposes
for which it was collected without the necessity
of an appropriation by the Legislature every two
years.</u>"  (Emphasis added.)

See also:  <u>Manion v. Lockhart, State Treasurer</u>, 131
Tex. 175, 114 S.W.2d 218; <u>Smith v. Paschal</u>, 1 S.W.2d 1086,
(Tex.Comm.App); <u>Tatum v. Wheeless</u>, 180 Miss. 800, 178 So. 95;
108 A.L.R. 595; Attorney General's Opinion WW-241 (1957).

The applicability of the holding of the Supreme Court
of Texas in the <u>Friedman</u> case, <u>supra</u>, to the question here pre-
sented is readily apparent. It leads us here to the same con-
clusion reached by the Supreme Court to the effect that the
funds provided for in both the Teacher Retirement and the Em-
ployee Retirement Acts become the property of a trust created
for the benefit of a class of citizens of this State,--the
employees and the teachers of the State, respectively, who con-
tribute in a large measure to the respective funds. The funds
so received by the two systems are held in trust by the State
and may be expended for no purpose other than that for which
received. We do not believe from a careful study of the va-
rious statutory provisions relating to the administration of
the two systems that the Legislature either contemplated or
has required that there must be a specific appropriation of
these funds before the same may be expended for the purposes
received; but on the contrary we believe that the effect of
the language used, when considered in light of the purposes
of the two acts, is to constitute a permanent and continuing
appropriation of the funds accruing to each system, thereby
eliminating the necessity of recurring legislative appropria-
tions each two years. As in the <u>Friedman</u> case, <u>supra</u>, the
State Treasurer has been constituted the custodian of each of
the two funds. The funds are not required to be paid into the
State Treasury but the applicable statutes require that they
be placed in the hands of the State Treasurer as custodian.
As the Supreme Court pointed out in the <u>Friedman</u> case, "the
officer who fills the office of State Treasurer is simply
given an additional duty or responsibility."

It must follow from what we have said that it is our
opinion that the respective funds of the two retirement systems
here involved may be expended in accordance with the general
laws governing the operation of the two systems without prior

specific appropriation by the Legislature of Texas. This is true because the two retirement Acts do not contemplate that funds of either system shall be placed in the State Treasury, and Section 6 of Article VIII of the Constitution of Texas, requires specific legislative appropriation only for funds expended or drawn from the Treasury.

The two retirement systems, however, may not expend any portion of the unexpended balances of the funds now on deposit in the State Treasury without specific appropriation of said funds made by the Legislature, even though it is our view that it was error, under existing statutes, for the funds to have been so deposited. Section 6, Article VIII, Constitution of Texas. We suggest, therefore, that the biennial appropriations bill appropriate any unexpended balances of funds belonging to the systems, now on deposit in the State Treasury, and direct and authorize the transfer of such balances to a special trust account with the State Treasurer acting as custodian. When this is accomplished it will not be necessary for the Legislature to make further appropriations of these funds before they may be legally expended by the governing board of each retirement system for the purposes for which received. The Biennial Appropriations Act should also appropriate to the Employees Retirement System and Teachers Retirement System the State's matching contribution. In the case of the Teachers Retirement System the State contribution should be appropriated from the allocations of the Omnibus Tax Fund, while the State's matching contribution for the Employees Retirement System should be made from the respective funds from which the employees, benefited by the Act, receive their respective salaries. This statement rests on the assumption that the Legislature will desire to continue to provide matching funds for the two retirement systems from the same sources as in the current Biennial Appropriations Act (H.B. 133, Acts of the 55th Legislature, Regular Session, 1957).

By way of summary, the Biennial Appropriations Act for the ensuing biennium should contain two items for each retirement system. One item should appropriate and authorize the transfer into a special trust account in the hands of the State Treasurer the unexpended balances of the funds now credited to the account of the respective retirement systems which are deposited in the State Treasury. The other item should appropriate to each system the State's matching contribution for the ensuing biennium.

We wish to emphasize, however, that the Legislature has full authority, if it so desires, to amend the existing

statutes so as to provide that all funds of the two retirement
systems be carried in special accounts within the State Treas-
ury.  Should this be accomplished no portion of said funds
could be expended without specific, prior appropriation by the
Legislature and in accordance with such appropriations.  Even
if the funds of the two systems are not deposited in the State
Treasury, thereby eliminating the necessity of legislative ap-
propriations, the Legislature may, by general statute, impose
such restrictions upon the expenditure of the funds as it may
deem necessary so long as such restrictions do not result in a
diversion of the funds to unauthorized purposes.

## SUMMARY

The respective funds of the Teachers Retire-
ment System and of the Employees Retirement System
are trust funds received by the State for a special
purpose, and under existing statutes should be
placed in the hands of the State Treasurer as cus-
todian but out of the State Treasury.

The Biennial Appropriations Act for the ensu-
ing biennium should appropriate the State's match-
ing contributions for each system and should also
appropriate the unexpended balances of funds depos-
ited to the credit of each system now in the State
Treasury and authorize and direct the transfer of
such balances to said special trust account.  Funds
hereafter accruing to each retirement system should
be deposited in such trust account.

Yours very truly,

WILL WILSON
Attorney General of Texas

By Leonard Passmore
Leonard Passmore
Assistant

LP:mfh:wb

APPROVED:

OPINION COMMITTEE

Geo. P. Blackburn, Chairman
Dean Davis
William E. Allen
Riley Eugene Fletcher
John B. Webster

REVIEWED FOR THE ATTORNEY GENERAL

BY:    W. V. Geppert